NOT FOR PUBLICATION                         [Docket Nos. 12, 15]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| FRANCIS NAPOLI & TANYA NAPOLI,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>HSBC MORTGAGE SERVICES INC. &<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.,<br><br>　　　　Defendant. | Civil No. 12-CV-222<br><br>(RMB-AMD)<br><br>**OPINION** |

Lewis G. Adler, Esq.
Roger C. Mattson, Esq.
Law Offices of Lewis G. Adler
26 Newton Avenue
Woodbury, New Jersey 08096

　　Attorneys for Plaintiffs

Andrew K. Stutzman, Esq.
Eric M. Hurvitz, Esq.
William T. Mandia, Esq.
Stradley Ronon Stevens & Young, LLP
LibertyView
457 Haddonfield Road, Suite 100
Cherry Hill, New Jersey 08002

　　Attorneys for Defendants

**BUMB**, United States District Judge:

　　Plaintiffs Francis Napoli and Tanya Napoli ("Plaintiffs") brought a putative class action in New Jersey Superior Court against Defendants HSBC Mortgage Services Inc. ("HSBC") and

1

Mortgage Electronic Registration Systems, Inc. ("MERS"). Defendants removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"). Plaintiffs have filed a motion to remand this case to New Jersey Superior Court. Defendants have filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Plaintiffs' Motion to Remand is DENIED, Defendants' Motion to Dismiss is GRANTED, and the case is DISMISSED with prejudice.

I. Background

Plaintiffs own residential property in Winslow Township, New Jersey. (Compl. ¶ 4). On September 25, 2002, Plaintiffs obtained a mortgage and note for their property that was secured by their residence. (Id. ¶¶ 7, 10). While Equity Financial, Inc. originated the loan, the mortgage was assigned to Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), a Delaware corporation. (Id. ¶¶ 6, 7, 11). The loan was serviced by Defendant HSBC Mortgage Services, Inc. ("HSBC"), a Delaware corporation. (Id. ¶¶ 5, 12).

On November 3, 2004, HSBC filed a foreclosure action against Plaintiffs in New Jersey Superior Court. (Id. ¶¶ 16, 17). On or about May 1, 2006, a final foreclosure judgment was entered against Plaintiffs. (Id. ¶ 24). In early August 2006, Plaintiffs sought to refinance their mortgage and requested that

HSBC notify them of the amount required to pay off the balance of their mortgage. (See id. ¶ 26). On August 10, 2006, HSBC notified Plaintiffs that it would cost them $177,106.22 to pay off their mortgage. (Id. ¶ 27).

On August 15, 2006, Plaintiff Tanya Napoli made an "Emergent Application for Stay of Sheriff's Sale" requesting that the sheriff's sale of their property, scheduled for the next day, be adjourned for two weeks. (Ex. 9 to Defs.' Memo. in Supp. of Mot. to Dismiss).[1] The request was predicated on the fact that the "pay off [was] . . . higher then expected," and that the refinancing lender needed more time to provide the refinancing in the higher amount. (Id.) Plaintiffs paid the full amount demanded by HSBC and MERS on or about August 29, 2006. (Compl. ¶ 28). Plaintiffs now claim that the correct payoff of the loan was $171,096.86, and that Defendants improperly

---

[1] While this document was attached to Defendant's Motion to Dismiss and not the Complaint, this Court may consider it on a motion to dismiss because it is a public record from the prior foreclosure action. See, e.g., Murakush Caliphate of Amexem Inc. v. New Jersey, 790 F. Supp. 2d 241, 252 (D.N.J. 2011) ("the court may take judicial notice of public records . . . pleadings and other documents . . . filed by a party in other judicial proceedings")(citation omitted); Wiatt v. Winston & Strawn LLP, 838 F. Supp. 2d 296, 312 (D.N.J. 2012)(taking judicial notice of prior publicly filed malpractice actions).

overcharged Plaintiffs by $6,008.36. (Id. ¶¶ 29-30). Plaintiffs now claim that this overcharge was wrongful and fraudulent. See generally Compl.

Plaintiffs later filed a class action in New Jersey Superior Court on behalf of themselves and others who they assert are similarly situated in that they experienced similar "illegal, fraudulent, and unconscionable business practices [by] the Defendants." (Id. ¶ 63). They assert causes of action based on their alleged overcharge, and alleged similar overcharging of class members by Defendants, for: (1) breach of contract; (2) violation of the New Jersey Consumer Fraud Act (CFA); (3) violation of the Truth-In-Consumer Contract, Warranty and Notice Act (TCCWNA); and (4) violation of the Uniform Commercial Code (UCC). They allege that: the members of the class are so numerous that "joinder of all members is impracticable" (Id. ¶ 69); Defendants engaged in thousands of foreclosures per year (Id.); their alleged damages, when trebled, would amount to $18,025.08; and that their claims are typical of the claims of the putative class members. Plaintiffs also request punitive damages. Defendants subsequently removed the action to this Court pursuant to CAFA.

II. Analysis

Plaintiffs have moved to remand, claiming that the required amount in controversy under CAFA, 28 U.S.C. § 1332(d), has not

4

been satisfied. Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6). The Court addresses each motion in turn.

A. Plaintiffs' Motion to Remand

On a motion to remand, the party seeking removal has the burden of satisfying all aspects of federal jurisdiction. See Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007); Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006). Under CAFA, for a federal court to retain jurisdiction: (1) at least one class member and one defendant must be citizens of different states, 28 U.S.C. § 1332(d)(2)(A); (2) there must be at least 100 members in the putative class, 28 U.S.C. § 1332(d)(5)(B); and (3) the amount in controversy must exceed $5,000,000 in the aggregate, 28 U.S.C. § 1332(d)(2) & (6). Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 149 (3d Cir. 2009). Here, the only issue in dispute is the amount in controversy.

To determine the amount in controversy, the court first reads the complaint filed in the state court. Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 398 (3d Cir. 2004). If the complaint is silent or ambiguous on any of the ingredients needed to calculate the amount in controversy, a defendant's notice of removal serves the same purpose as a complaint. Morgan, 471 F.3d at 474. In making this determination, the Third Circuit applies the legal-certainty test. See Samuel-Bassett,

5

357 F.3d at 398; Kaufman, 561 F.3d at 151. Under that test, the court will decline to remand "unless it appears, to a legal certainty, that the plaintiff was never entitled to recover the jurisdictional amount." Kaufman, 561 F.3d at 151 (citing Frederico, 507 F.3d at 197).[2]

Because Plaintiffs' claims are alleged to be typical of the class, it is reasonable for this Court to simply multiply their purported damages amount by the number of foreclosures alleged in the Complaint. See Frederico, 507 F.3d at 199 (applying the same logic to multiply the named plaintiff's damages by the number of putative class members); Lewis v. Ford Motor Co., 610

---

[2] Plaintiffs mischaracterize the proper Third Circuit standard for the amount in controversy requirement. They assert that Defendants bear the burden of establishing, to a legal certainty, that the amount in controversy meets the jurisdictional amount, and that this Court's decision in Lamond v. Pepsico, Inc., No. 06-3043, 2007 WL 1695401 (D.N.J. June 8, 2007) supports this proposition. While this Court did hold in Lamond that the defendants bore the burden of proving the requisite amount in controversy to a legal certainty (Id. at *5), Lamond was decided at a time of district court confusion as to the proper standard. See Frederico, 507 F.3d at 193 (describing the previous disagreement among the district courts on this issue). The Third Circuit has since clarified that "[t]he case will be dismissed only if . . . to a legal certainty . . . the plaintiff cannot recover the amount claimed." Id. at 194. And this Court later recognized that its decision in Lamond misconstrued the applicable standard. Martin v. Wal-Mart Stores, Inc., 709 F. Supp. 2d. 345, 349 n.4 (D.N.J. 2010)("In fact, a few months before the Third Circuit helped to clarify matters in Frederico, this Court misstated the controlling legal rule.")(citing Lamond v. Pepsico, Inc., No. 06-3043, 2007 WL 1695401, at *5 (D.N.J. June 8, 2007)).

F. Supp. 2d 476, 486 (W.D. Pa. 2009)(same); Margulis v. Resort Rental, LLC, No. CIV. A. 08-1719, 2008 WL 2775494, at *6 (D.N.J. July 14, 2008)(same). Here, looking at compensatory damages alone, and not including any punitive damages, there would only need to be 278 foreclosures with the same damages to satisfy the amount in controversy of $5,000,000, far less than the number of claimed foreclosures. See Frederico, 507 F.3d at 198-99 (stating that under New Jersey law, punitive damages can be collected up to five times the compensatory damages amount) (citing N.J. Stat. Ann. § 2A:15-5.14(b)). Thus, this Court cannot say, to a legal certainty, that the amount in controversy would be under the $5,000,000 required. Plaintiff's Motion to Remand is therefore DENIED. The Court next turns to Defendants' Motion to Dismiss.

 B. Defendants' Motion to Dismiss

 Defendants contend that Plaintiffs' claims are barred by New Jersey's entire controversy doctrine and have also moved to dismiss on a number of other grounds. Because the Court concludes that the entire controversy doctrine applies, it does not address these other grounds.

 New Jersey's entire controversy doctrine, which this Court is bound to apply, "compels the parties, when possible, to bring all claims relevant to the underlying controversy in one legal action," including defenses and counterclaims. Coleman v. Chase

Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp., 446 F. App'x 469, 471 (3d Cir. 2011)(citing N.J. Ct. R. 4:30A)(holding that the doctrine is applicable to New Jersey claims in federal court); see also Olds v. Donnelly, 696 A.2d 633, 638 (N.J. 1997)(holding that the doctrine includes defenses and counterclaims); Oliver v. Am. Home Mort. Servicing, Inc., Civ. No. 09-0001, 2009 WL 4129043, at *3-4 (D.N.J. Nov. 19, 2009)(applying the entire controversy doctrine in the foreclosure context). It does so by barring parties from raising, in a subsequent proceeding, any claims it knew, or should have known about, during a prior proceeding. See Maertin v. Armstrong World Indus., Inc., 241 F. Supp. 2d 434, 456 (D.N.J. 2002)(holding that the entire controversy doctrine is invoked when the party bringing a new claim had "knowledge of the existence of a cause of action" during the first proceeding, and that such knowledge exists when the party "knows, or should have known" of the facts which establish that an injury has occurred, and when fault for that injury can be attributed to another). The doctrine does not bar claims that "accrued after the pendency of the original action." Coleman, 446 F. App'x at 472 (citation omitted). The rule is equitable in nature, and courts balance the interests of judicial efficiency with fairness to the parties. Id. at 471.

The entire controversy doctrine applies to foreclosure actions, but is "narrower" in this context, requiring only "germane" counterclaims to be joined. N.J. Ct. R. 4:64-5; Coleman, 446 F. App'x at 472 (citing N.J. Ct. R. 4:30A); see also In re Mullarkey, 536 F.3d 215, 229 (3d Cir. 2008)(holding that the doctrine applies to foreclosure proceedings). Germane counterclaims are those that "arise out of the mortgage that is the basis of the foreclosure action" (Coleman, 446 F. App'x at 472) and include claims relating to "payment and discharge, [and] incorrect computation of the amounts due." LaSalle Nat'l Bank v. Johnson, 2006 WL 551563, at *2 (N.J. Super. Ct. Ch. Div. Mar. 3 2006).

Here, Plaintiffs' claims are barred by the entire controversy doctrine because they should have been raised during the foreclosure proceeding. Plaintiffs do not dispute that their claims were germane to the foreclosure proceeding. They clearly were. See Coleman, 446 F. App'x at 472 (describing germane counterclaims as those that "arise out of the mortgage that is the basis of the foreclosure action"); LaSalle, 2006 WL 551563, at *2 (including as germane those claims that relate to "payment and discharge, [and] incorrect computation of the amounts due"). Nor do they dispute that they were on notice of their claims when they received the payoff quote. Plaintiffs' submission of the Emergent Application for Stay of Sheriff's Sale is powerful

9

evidence that they did, in fact, have knowledge of the alleged discrepancy and, even if they did not know, they should have, since they had received a payoff amount that was higher than expected. See Coleman, 446 F. App'x at 472 (holding that when a party receives a reinstatement quote that differs from what the party was expecting, that party should have been aware of the discrepancy at the time the quote was provided).

Plaintiffs argue, however, that they lacked an opportunity to assert their claims during the foreclosure proceeding because final judgment had already been entered when they received the payoff notice, and their claims arose between final judgment and the payoff notice. Plaintiffs are incorrect. In foreclosure actions, courts retain jurisdiction until either: (1) if the home is sold at sheriff's sale, the later of ten days after the sheriff's sale or the delivery of the sheriff's deed; or (2) if the sheriff's sale is averted by payoff, until payment is made, the judgment is entered, and the case is dismissed. See Hardyston Nat'l Bank of Hamburg, N.J. v. Tartamella, 267 A.2d 495, 498 (N.J. 1970)("Hence we believe the just course is to permit the mortgagor to redeem within the ten-day period fixed by [N.J. Ct.] R. 4:65-5 for objections to the sale and until an order confirming the sale if objections are filed under the rule."); Coleman, 446 F. App'x at 472 ("A court retains jurisdiction in a foreclosure action even after a final

judgment, until delivery of the sheriff's deed under New Jersey Court Rule 4:65-5. . . . The foreclosure action, although already the subject of a judgment, is not totally concluded until the defendants' equity of redemption is cut off by the delivery of the sheriff's deed."); Sovereign Bank, FSB v. Kuelzow, 687 A.2d 1039, 1043 (N.J. Super Ct. App. Div. 1997)("The foreclosure action . . . is not totally concluded until the defendants' equity of redemption is cut off by the delivery of the sheriff's deed."); N.J. Ct. R. 4:65-5 ("A sheriff who is authorized or ordered to sell real estate shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to the sale is served within 10 days after the sale or at any time thereafter before the delivery of the conveyance."). Here, while it is unclear when the foreclosure action formally closed, the foreclosure court retained jurisdiction until at least when Plaintiffs paid the payoff quote on August 29, 2006. Plaintiffs therefore had a full opportunity to assert their claims during the prior foreclosure action.

Plaintiffs make three additional arguments against the application of the entire controversy doctrine: (1) that Gonzalez v. Wilshire Credit, 25 A.3d 1103 (N.J. 2011) signals that claims based on post final judgment conduct during a foreclosure proceeding may be asserted in a separate proceeding;

11

(2) that application of the entire controversy doctrine here would run afoul of N.J. Stat. Ann. 2A:50-67, which permits a debtor to offer "partial payment of any sum owing and due without either party waiving any rights"; and (3) that application of the entire controversy doctrine would be inequitable.

These arguments lack merit. First, Plaintiffs' reliance on Gonzalez is misplaced. In Gonzalez, the New Jersey Supreme Court permitted the plaintiffs to proceed in an action asserting claims based on post foreclosure conduct. This, according to Plaintiffs, amounts to a rejection of the entire controversy doctrine to these types of claims. But Gonzalez did not address the applicability of the entire controversy doctrine in this context. It solely addressed the applicability of the CFA to these claims. See generally Gonzalez, 25 A.3d 1103 (N.J. 2011).[3]

---

[3] In Gonzalez, the plaintiff had a sixth grade education and spoke no English. Gonzalez, 25 A.3d at 1109. The Gonzalez plaintiff's claims were based on allegedly deceptive conduct that occurred in negotiations conducted in English, without counsel, and that were scheduled without any effort by defendant to contact plaintiff's counsel, despite the fact that the defendants should have known that plaintiff was represented at the time. Gonzalez, 25 A.3d at 1109, 1119 ("Plaintiff was contacted directly; neither Wilshire nor U.S. Bank notified Ms. Chester, the attorney who represented plaintiff on the first agreement."). While Gonzalez did not address the applicability of the entire controversy doctrine to the plaintiff's case, the equities in that analysis, based on these facts, would be far different from those alleged here. See generally Gonzalez, 25 A.3d 1103 (N.J. 2011).

And practically the same argument was raised and rejected without comment by the Third Circuit in Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp., 446 F. App'x 469 (3d Cir. 2011. See Brief for Appellant, filed Oct. 27, 2010, at 15-16, Coleman, No. 09-4727, 446 F. App'x 469; see generally Coleman, 446 F. App'x 469. While the New Jersey Supreme Court had not yet decided Gonzalez at the time, the plaintiff in Coleman relied on the Appellate Division's decision in Gonzalez v. Wilshire Credit Corp., 988 A.2d 567 (N.J. Super. Ct. App. Div. 2010) which is substantively identical to the New Jersey Supreme Court's final decision. Compare Gonzalez, 25 A.3d 1103, with Gonzalez v. Wilshire Credit Corp., 988 A.2d 567 (N.J. Super. Ct. App. Div. 2010). Second, N.J. Stat. Ann. 2A:50-67 merely states that partial payment does not waive any rights of the parties. It does not address when a claim needs to be asserted, or the applicability of the entire controversy doctrine. And, in any event, N.J. Stat. Ann. 2A:50-67 does not appear to apply here because it specifically addresses partial payments, and Plaintiffs allege here that they paid in excess of what they owed. Finally, equity mandates that this Court dismiss this action because Plaintiffs had sufficient opportunity, and failed, to bring this claim in the original foreclosure action. See Oliver, 2009 WL 4129043, at *3 (finding the entire controversy doctrine applicable where the plaintiff had twelve

13

days from receiving the reinstatement quote until the case was dismissed to bring his claim in the original foreclosure action); see also Coleman, 446 F. App'x at 471 (noting that courts must balance the interests of judicial efficiency with fairness to the parties).

Because these deficiencies cannot be cured by amending the Complaint, Plaintiffs' Complaint is DISMISSED with prejudice. See Coleman, 446 F. App'x at 473 (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997))(holding that, in a case involving a post judgment discrepancy with a reinstatement quote, the district court did not abuse its discretion by dismissing the claims with prejudice because the plaintiff had a fair opportunity to litigate his claim in the first action, and amendment could not cure the failure to do so).

III. Conclusion

For all these reasons, Plaintiffs' Motion for Remand is DENIED, Defendants' Motion to Dismiss the Complaint is GRANTED, and the Complaint is DISMISSED with prejudice. Because this Court dismisses all of Plaintiffs' individual claims, and Plaintiffs' purported class has not yet been certified, Plaintiffs' class allegations must also be dismissed. See Bass v. Butler, 116 F. App'x 376, 385 (3d Cir. 2004); Donachy v. Intrawest U.S. Holdings, Inc., No. 10-4038, 2012 WL 869007, at

14

*9 (D.N.J. Mar. 14, 2012).

                                            s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            United States District Judge

Dated: August 27, 2012